**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Entertainment USA Incorporated, | No. CV-22-00970-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Tadeusz Baldinsky, et al., | |
| Defendants. | |

Pending before the Court is a motion for default judgment filed by Plaintiff Entertainment USA, Inc. dba Christie's Cabaret ("Plaintiff"). (Doc. 29.) For the following reasons, the motion is granted and this action is terminated.

## BACKGROUND

As alleged in the operative pleading, the First Amended Complaint ("FAC"), Plaintiff owns and operates several so-called "gentlemen's clubs" under the "Christie's Cabaret" brand. (Doc. 20 ¶ 19.) Since at least June 2003, Plaintiff has been the owner of the Christie's Cabaret Service Mark for use in connection with nightclub services in the nature of adult entertainment (the "Christie's Mark"). (*Id.* ¶ 22.) Plaintiff has devoted significant resources and efforts to promoting the brands and reputation of Christie's Cabaret within the industry. (*Id.* ¶¶ 26, 27.)

In or around 2020, Plaintiff's owner and CEO, Steve Cooper, acquired title to two existing so-called gentlemen's clubs in Tucson, Arizona. (*Id.* ¶¶ 4, 29-30.) Afterward, "neighborhood residents in and around [one of those clubs] began publishing false,

defamatory statements about activities going on at the club, including false accusations of criminal conduct." (*Id.* ¶ 31.) During an ensuing state-court lawsuit, "it was revealed that several of these residents used the website registered at www.christiescabarettucson.com to further false claims of ongoing illegal conduct at the [club's] location, including accusations of prostitution." (*Id.* ¶ 33.) This website "directs users to [other] websites . . . where users can pay for access to 'chat rooms' with 'online strippers.'" (*Id.* ¶ 34.) However, Plaintiff "has never offered these services nor associated itself with websites that offer such services" and never gave "permission to use the Christie's Cabaret tradename in connection with the sale or advertisement of its services." (*Id.* ¶¶ 36-37.)

In June 2022, Plaintiff initiated this action by filing a complaint. (Doc. 1.) The defendant named in the initial complaint was the individual believed to be the registrant of the www.christiescabarettucson.com domain name. (*Id.* ¶ 5.) However, Plaintiff later sought (and was granted) leave to convert this action into an *in rem* action. (Doc. 16.) Accordingly, the sole defendant named in the FAC is the www.christiescabarettucson.com domain name ("Defendant"). (Doc. 20 ¶¶ 10, 16.)

In the order granting Plaintiff's motion to convert this action into an *in rem* action, the Court held that service by publication was not required and that service of process was deemed effectuated. (Doc. 16 at 10.)[1] Accordingly, on June 1, 2023, after Defendant failed to answer or otherwise respond to the FAC, Plaintiff filed an application for entry of default. (Doc. 27.) The next day, the Clerk entered default. (Doc. 28.)

On October 11, 2023, Plaintiff filed the pending motion for default judgment. (Doc. 29.) The time to respond has expired and Defendant did not file a response.

…

---

[1] The Court's rationale for not requiring service by publication was as follows: "Where, as here, the registrant of a domain name has concealed his or her identity by registering the domain name under a fictitious name and has made himself or herself impossible to find by listing an inaccurate postal address and phone number, and possibly an inaccurate email address as well, and there is no way to know the city or even the country in which he or she might reside, there is simply no manner of publication that reasonably could be expected to reach the registrant. Impossibility is reason enough for the Court to decline to direct publication. The Court further notes that the registrant's efforts to make himself or herself unfindable cut against imposing upon Plaintiff a burdensome publication requirement." (Doc. 16 at 9-10.)

**DISCUSSION**

I. <u>Legal Standard</u>

The "decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The following factors, known as the *Eitel* factors, may be considered when deciding whether default judgment is appropriate: (1) the possibility of prejudice to the plaintiff, (2) the merits of the claims, (3) the sufficiency of the complaint, (4) the amount of money at stake, (5) the possibility of factual disputes, (6) whether the default was due to excusable neglect, and (7) the policy favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

"[T]he general rule" for default judgment purposes "is that well-pled allegations in the complaint regarding liability are deemed true." *Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). "The district court is not required to make detailed findings of fact." *Id.* "However, necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

II. <u>The First, Fifth, Sixth, And Seventh *Eitel* Factors</u>

"In cases like this one, in which Defendants have not participated in the litigation at all, the first, fifth, sixth, and seventh [*Eitel*] factors are easily addressed." *Zekelman Indus. Inc. v. Marker*, 2020 WL 1495210, *3 (D. Ariz. 2020).

The first factor weighs in favor of default judgment. If Plaintiff's motion were denied, it would be without other recourse for recovery. *PepsiCo, Inc. v. Cal. Sec. Cans.*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

The fifth and sixth factors weigh in favor of default judgment or are neutral. Due to Defendant's failure to respond to the FAC, there is no dispute over material facts and no indication that default is due to excusable neglect. (*See also* Doc. 16.)

The seventh factor generally weighs against default judgment, given that cases "should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, the existence of Rule 55(b), which authorizes default judgments, "indicates that

this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177.

III. The Fourth *Eitel* Factor—The Amount Of Money At Stake

Under the fourth factor, the Court considers the amount of money at stake in relation to the seriousness of the defendant's conduct. Here, Plaintiff "does not seek actual damages or lost profits, but instead seeks statutory damages of $10,000.00 under 15 U.S.C. § 1117(d) and transfer of the Infringing Domain." (Doc. 29-1 at 8.) This request is relatively modest (and reasonable), given that § 1117(d) authorizes "an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just," and the alleged misconduct here was serious. Accordingly, the fourth *Eitel* factor either favors default judgment or is at worst neutral.

IV. The Second And Third *Eitel* Factors—Merits And Sufficiency

That leaves the second and third *Eitel* factors—the merits of the claim and the sufficiency of the complaint. "These two factors are often analyzed together and require courts to consider whether a plaintiff has stated a claim on which it may recover." *Vietnam Reform Party v. Viet Tan - Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019) (internal quotation marks omitted). "Of all the *Eitel* factors, courts often consider the second and third factors to be the most important." *Id*.

Here, both factors weigh in favor of granting default judgment. Taken as true, the factual allegations in the FAC establish that Plaintiff has valid claims for cybersquatting and trademark infringement, for the reasons set forth in Plaintiff's memorandum. (Doc. 29-1 at 6-7.)

V. Balancing The Factors

Having considered all of the *Eitel* factors, the Court concludes that default judgment is appropriate.

…

…

…

…

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for default judgment (Doc. 29) is **granted**. A separate judgment shall issue, after which the Clerk shall terminate this action.

Dated this 27th day of November, 2023.

Dominic W. Lanza
United States District Judge